**RUBIN LLC**
*Attorneys for Samuel Pfeiffer*
Paul A. Rubin
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 390-8054
(212) 390-8064 (fax)
prubin@rubinlawllc.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
:
In re:                                                                :          Chapter 11
:
:
AABS 1200 LLC,                                         :          Case No. 16-43204 (NHL)
:
:
:
                                Alleged Debtor.         :
:
-------------------------------------------------------x

**MOTION FOR ORDER (I) CLARIFYING THAT AUTOMATIC
STAY DOES NOT APPLY TO NON-DEBTORS AND MODIFYING
AUTOMATIC STAY AS TO ALLEGED DEBTOR TO PERMIT STATE COURT
ACTION AND ARBITRATION TO PROCEED AND (II) CONDITIONING
DEBTOR'S RIGHT TO DISPOSE OF PROPERTY UNDER U.S.C. § 303(f)**

Samuel Pfeiffer, by and through his undersigned counsel, hereby submits this

motion for entry of an order (I) clarifying that the automatic stay in effect in this case does

not apply to non-debtors in certain prior pending state court litigation or arbitration

described below, and modifying the automatic stay as to AABS 1200 LLC ("AABS" or

the "Alleged Debtor") pursuant to 11 U.S.C. §362(d)(1) so as to permit existing state court

litigation and arbitration contemplated by the parties to proceed as to the Alleged Debtor;

and (II) conditioning the Alleged Debtor's right to dispose of property under section 303(f)

of the Bankruptcy Code (the "Motion").  In support thereof, Mr. Pfeiffer respectfully represents as follows:

## INTRODUCTION

1.      Mr. Pfeiffer and his partner, Mr. Fishman, entered into a contract in December 2009 (the "Master Contract") to purchase the interests in AABS, which is a contract vendee to purchase certain valuable real estate (the "Fort Hamilton Property"), plus four unrelated properties (the "Four Properties") from Jacob Birnbaum, Abraham Sofer and  entities that were under their control.

2.      Mr. Pfeiffer then spent $2 million to preserve the Alleged Debtor's rights under its contract to purchase the Fort Hamilton Property (the "Maltz Contract").  He also settled defaulted mortgages and satisfied real estate taxes and tax liens that encumbered the Four Properties by paying over $1.625 million, and he spent over $6.5 million to build five residential buildings on what was vacant land.

3.      Unfortunately, Birnbaum and Sofer defaulted on their obligations under the Master Contract by, among things, failing to deliver into escrow the documents necessary to transfer their ownership interests in the Alleged Debtor or the interest of the Alleged Debtor in the Maltz Contract.  They also violated the Master Contract by transferring two of the Four Properties to relatives or each other instead of to Pfeiffer and his partner, Mr. Fishman.  Birnbaum and Sofer also failed to disclose, before or when the Master Contract was signed, that there exists a third owner in AABS whose rights Mr. Pfeiffer would have to buy out in order to obtain complete ownership of the entity.   After failed efforts at mediation, Pfeiffer summoned them to arbitration before a rabbinical arbitrator (the "First Arbitrator") as contemplated by the Master Contract.

2

4.      In June 2015, Birnbaum and Sofer, for themselves and the Alleged Debtor,
commenced an action in Kings County Supreme Court seeking injunctive relief in aid of
arbitration (the "State Court Action").   Pfeiffer exercised his right under the Master
Contract to add a second rabbi (the "Second Arbitrator") to the arbitration proceeding.
Pfeiffer consented to the state court's entry of a temporary restraining order (the "8/19/15
TRO") that enjoined him from continuing to act for the Alleged Debtor because this TRO
also ordered that the Second Arbitrator be added to the arbitration proceeding, and that the
arbitration proceed within 45 days of entry of that order.

5.      In defiance of the state court's TRO, the First Arbitrator refused to conduct
the arbitration with the Second Arbitrator, and Birnbaum and Sofer refused to appear for
an arbitration including the Second Arbitrator together with the First Arbitrator.  Both sides
moved in the state court to have the other held in contempt.  The state court has not ruled
on either motion

6.      The most recent deadline for the Alleged Debtor to close on its purchase
under the Maltz Contract was July 21, 2016.  In early July, Pfeiffer moved by order to show
cause for an order modifying the 8/19/15 TRO so as to permit him to cause AABS to close
on its purchase of the Fort Hamilton Property under the Maltz Contract.  This involuntary
bankruptcy case was filed before the state court ruled on that motion.  On August 3, 2016,
upon learning of the filing of this case, the state court decided that the State Court Action
is completely stayed as to all parties in all respects, non-debtors and the Alleged Debtor
alike, and that it would take no further action in that case unless and until this Court issued
an order providing that it is permitted to do so.

7.     Time is of the essence as the deadline for closing under the Maltz Contract, even as extended by virtue of this filing by the Bankruptcy Code, is fast approaching, and there is a dispute over who has the right to own and act on behalf of the Alleged Debtor. Accordingly, Pfeiffer hereby seeks an order of this Court clarifying that the State Court Action may proceed as to the non-debtor parties and modifying the automatic stay so as to permit the State Court Action and the arbitration between all of the parties to proceed. He also asks that the Court condition the right of the Alleged Debtor, under the control of Birnbaum and Sofer, to use, acquire or dispose of property by prohibiting it from transferring its interest in the Maltz Contract, and from transferring the Fort Hamilton Property (should AABS somehow acquire it) or any proceeds from a sale of its interest in the Maltz Contract or the Fort Hamilton Property, and from making any payments, distributions or transfers to any of its members, their relatives or any other insiders, pending a determination of this Court whether an order for relief against the Alleged Debtor should be entered in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

8.     The relevant facts are set forth in the accompanying affirmation of Samuel Pfeiffer submitted in support of this Motion (the "Pfeiffer Aff.") and are incorporated herein by reference.   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Pfeiffer Aff.

## JURISDICTION

9.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  This Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

10.     The statutory predicates for the relief requested herein are sections 105(a), 362 and 303(h) of the Bankruptcy Code and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure.

### RELIEF REQUESTED

11.     This Motion seeks entry of an order clarifying that the automatic stay in effect in this case pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay") does not prevent (i) continuation of prosecution of any claims of any kind in the State Court Action (including any appeals) as between any non-debtor parties, including Birnbaum, Sofer, 42nd Street Properties LLC, Mr. Pfeiffer, Mr. Fishman or any other non-debtor, or (ii) arbitration of any claims or disputes, between any non-debtor parties, arising under or related to the Master Contract or any related agreement.   This Motion also seeks modification of the automatic stay so as to permit litigation in the State Court Action, and arbitration involving the subject matter of the Master Contract, of any claims or resolution of any disputes of any kind by, against or involving the Alleged Debtor, to proceed.

12.     Finally, this Motion seeks asks that the Court condition the right of the Alleged Debtor to use, acquire or dispose of property under 11 U.S.C.§ 303(f) by prohibiting it from selling or assigning its interest in the Maltz Contract, and from transferring the Fort Hamilton Property or any proceeds from a sale of its interest in the Maltz Contract or the Fort Hamilton Property, and from making any payments, distributions or transfers to any of its members, their relatives or any other insiders, pending a determination of this Court whether an order for relief against the Alleged Debtor should be entered in this case.

**ARGUMENT**

I.   **THERE IS CAUSE FOR CLARIFICATION REGARDING AND RELIEF FROM THE AUTOMATIC STAY**

   A.   **The Automatic Stay Does Not Apply to Non-Debtors in the State Court Action or in Arbitration of Disputes Among Non-Debtors**

13.   At the hearing held on August 3, 2016 in the State Court Action concerning the emergency motion by Pfeiffer by order to show cause to modify or vacate the 8/19/15 TRO so as to permit him to close on the purchase of the Fort Hamilton Property for the Alleged Debtor, the State Court concluded that the entire State Court Action is stayed because one named Petitioner, the Alleged Debtor, is the subject of an involuntary petition in this. A copy of the order entered by the State Court following the August 3, 2016 hearing staying the entire State Court Action is annexed hereto as Exhibit A. It is not disputed that the automatic stay applies as to the Alleged Debtor even though no order for relief has been entered in this case.

14.   However, the law is clear that if one party to a state court lawsuit becomes the subject of a case under the Bankruptcy Code, the automatic stay invoked by that filing does not stay the action as to other non-debtor parties in that action. *See Buchakin v. Kurgia*, 138 A.D.3d 711, 28 N.Y.S.3d 724 (2nd Dep't 2016); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC*, 13 A.D.3d 89, 786 N.Y.S.2d 161 (1st Dep't 2004). Here, Birnbaum and Sofer are non-debtor parties, as petitioners, in the State Court Action. The automatic stay does not apply to prevent litigation by or against them from proceeding. As an initial matter, even if the automatic stay were not lifted as to the Alleged Debtor, the State Court Action should be able to continue as against Birnbaum and Sofer. The automatic stay does not prevent the State Court from severing the State Court Action

6

as to the Alleged Debtor and continuing the State Court Action as to the non-debtor parties, and the arbitration between and among the non-debtor parties may continue.

15.    In fact, the underlying dispute has two different aspects. One component relates to the Four Properties that were the subject of the foreclosure actions, which were never owned by the Alleged Debtor. Birnbaum and Sofer did not cause recording of the transfer of two of those properties to or for the benefit of Mr. Pfeiffer and Mr. Fishman. Instead they improperly transferred control of those properties to their relatives or themselves. This aspect of the dispute does not implicate or involve AABS.

16.    The second component is the dispute under the Master Contract as to who has the right to control the affairs of the Alleged Debtor and therefore close on the purchase of the Fort Hamilton Property for the Alleged Debtor. But this aspect of the dispute also includes issues other than rights, claims or obligations of AABS. Under the Master Contract, Mr. Birnbaum and Mr. Sofer agreed to sell to Mr. Pfeiffer and Mr. Fishman their interests in the Alleged Debtor, and they did not disclose to him Mr. Inzlicht's ownership interest in the Alleged Debtor.

17.    It was Birnbaum and Sofer who never deposited into escrow the documents necessary to transfer ownership of the Alleged Debtor. When Birnbaum and Sofer commenced the State Court Action against Mr. Pfeiffer, they omitted Mr. Fishman as a respondent, but they added AABS as a petitioner. Mr. Pfeiffer is now seeking clarification from this Court to the State Court that the automatic stay does not stay the State Court Action or arbitration from proceeding to determine rights, claims and obligations of non-debtor parties as between each other as a consequence for their actions.

**B.    To the Extent that the Automatic Stay Applies to the State Court Action or Arbitration of the Disputes Among the Parties to the Master Contract, The Stay Should Be Modified to Permit Resumption of Those Proceedings**

18.    An important aspect of the dispute between the parties to the Master Contract is who has the right to act on behalf of AABS. With Mr. Birnbaum's full knowledge, Mr. Pfeiffer made eighty payments of $25,000 each over the course of several years (spending two million dollars) to preserve AABS's right to purchase the Fort Hamilton Property. Mr. Pfeiffer executed as Managing Member of AABS multiple extensions of the deadline for AABS's purchase of the Fort Hamilton Property from Maltz. Mr. Birnbaum even prompted Mr. Pfeiffer to make payment when Maltz complained that payment was late (See Ex. D to Pfeiffer Aff.). Mr. Pfeiffer also worked extensively on plans to develop the Fort Hamilton Property

19.    It is respectfully submitted that, to the extent it applies to the State Court Action or the arbitration of any disputes involving AABS relating to the Fort Hamilton Property or the Master Contract, cause exists within the meaning of section 362(d)(1) to lift the automatic stay in effect in this case so as to break the current logjam.

20.    There is now a dispute as to who owns and has the right to act for AABS. The clock is ticking on the right of AABS to close on the contract with Maltz, even after taking into account extra time available for a closing under the Maltz Contract by virtue of the filing of this case. Additionally, there is a dispute as to who should be able to speak on behalf of AABS in this proceeding.

21.    The dispute over control of AABS is supposed to be referred to arbitration, but for nearly one year the First Arbitrator has refused to sit with the Second Arbitrator to decide the dispute, in violation of the State Court's 8/19/15 TRO and Section 8 of the

Master Contract, and despite Mr. Fishman's written request to be included in the arbitration. This matter is time sensitive as the millions of dollars that Mr. Pfeiffer paid on behalf of AABS to preserve the right to close under the Maltz Contract are now in jeopardy. Had Mr. Birnbaum simply performed as he was supposed to under the Master Contract by delivering documents into escrow, those funds would not be on the verge of being permanently lost.

22.    Moreover, the State Court sees its hands as being tied due to the filing of the involuntary bankruptcy petition, and it has stated that it will not take any action in the State Court Action unless and until this Court grants relief from the automatic stay.

23.    Section 362(d) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1).

24.    The Bankruptcy Court has wide discretion to grant relief from the automatic stay. *See In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). What constitutes "cause" under section 362(d)(1) justifying stay relief is not specifically defined by the Bankruptcy Code and is determined on a case by case basis. *See Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285-86 (2d Cir. 1990).

25.    Courts in the Second Circuit (and elsewhere) have considered the following factors when determining if "cause" exists to lift the stay: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or

9

interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax*, 907 F.2d at 1286.

26.    All twelve *Sonnax* factors will not be relevant in every case. *See In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994). Only the relevant factors need be considered. *See In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). The court need not assign equal weight to all of the factors. *See id.*; *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). The court is even allowed to lift the automatic stay *sua sponte* to allow litigation to continue in another forum. *See In re Megan-Racine Assocs., Inc.*, 180 B.R. 375, 383 (Bankr. N.D.N.Y. 1995); *In re Laventhal and Horwath*, 139 B.R. 109, 116 n.6 (S.D.N.Y. 1992)

27.    Here, the relevant *Sonnax* factors weigh heavily in favor of granting relief from the automatic stay; none of the factors militate against it. Granting relief from the stay to continue litigation of the State Court Action and arbitration of the disputes among the parties involving AABS will facilitate resolution of the disputes among the parties to

the Master Contract. It would also help resolve the question of who may act for AABS in this case.

28.    Permitting the State Court and the arbitrators to rule on the disputes between and among Messrs. Birnbaum, Sofer, Pfeiffer, Fishman and AABS would not prejudice the rights of any creditors of the Alleged Debtor. Indeed, counsel for the petitioning creditors in this case have advised the undersigned counsel for Mr. Pfeiffer that they intend to support this Motion.

29.    Most of the parties to the State Court Action and the arbitration contemplated by the Master Contract are non-debtors. Permitting the automatic stay in effect in this case to stymie completely ongoing efforts to resolve disputes existing primarily among non-debtors would be unjust.

30.    Moreover, the parties wrote the Master Contract in Hebrew and agreed to submit a dispute under the Master Contract to specific rabbinic arbitrators who can read the Master Contract and interpret its meaning. This situation is complicated by the fact that the First Arbitrator refused to comply with the 8/19/15 TRO. Pfeiffer submits that the State Court should be given the opportunity to vindicate its authority and to determine the appropriate ramifications for such disobedience by an arbitrator and by litigants who invoked that court's jurisdiction in order obtain relief in aid of arbitration. These considerations also support modification of the automatic stay.

31.    Granting relief from automatic stay would serve the interests of judicial economy and the expeditious resolution of litigation because the State Court is already familiar with this dispute and the parties have already made written submissions for consideration of the arbitrators.

32.    Finally, the balance of harms favors granting relief from the stay because Mr. Pfeifer is at risk of losing his millions of dollars that he has spent on behalf of AABS to preserve the Maltz Contract for its benefit, while Mr. Birnbaum and Mr. Sofer would be permitted to profit from their conduct, without having expended monies of their own to preserve the rights of AABS under the Maltz Contract. It would be grossly unfair if their conduct in violation of the Master Contract would effectively escape scrutiny such that they could proceed to "flip" the Maltz Contract to their personal benefit and Mr. Pfeiffer's detriment.   Mr. Pfeiffer's intent is to develop the Fort Hamilton Property.  Birnbaum and Sofer are not real estate developers and they may intend to "flip" or resell the Fort Hamilton Property should AABS close on the purchase from Maltz.  Such a purchase and sale may trigger tax liability for Pfeiffer, who is supposed to be the owner of AABS by virtue of the Master Contract.

33.    It is respectfully submitted that, under the circumstances, there is more than ample cause within the meaning of 11 U.S.C. § 362(d)(1) to modify the automatic stay to allow the State Court Action and arbitration proceedings involving AABS to proceed.

**II.    CONDITIONING USE OF PROPERTY UNDER 11 U.S.C. § 303(f)**

34.    Section 303(f) of the Bankruptcy Code provides authority for an alleged debtor to continue to operate until an order for relief has been entered in an involuntary case. But "[t]here are safeguards in place under the Code which prevent § 303(f) from leaving a debtor free to wander the financial meadows." *See In re Gaudreault*, 315 B.R. 1, 8 (Bankr. D. Mass. 2004)(internal citations omitted).   Specifically, Section 303(f) provides as follows:

> (f) Notwithstanding section 363 of this title, *except to the extent that the court orders otherwise*, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f) (Italics added).

35. The introduction of the phrase "except to the extent that the court orders otherwise" allows the court to impose restrictions or limitations on a debtor's operations. *See* 2 Norton Bankruptcy Law and Practice §22.13 (3d ed. 2008). In fact, the legislative history for Section 303(f) clearly provides that bankruptcy courts will issue orders preventing the debtor from dissipating property of the estate:

> [Section 303(f)] permits the debtor to continue to operate any business of the debtor and to dispose of property as if the case had not been commenced. **The court is permitted, however, to control the debtor's powers under this subsection by appropriate orders, such as where there is a fear that the debtor may attempt to abscond with assets, dispose of them at less than their fair value, or dismantle his business, all to the detriment of the debtor's creditors.**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 323 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 33 (1978) (emphasis added). The legislative history of section 303(f) indicates that imposition on restrictions under section 303(f) may be appropriate where there is a fear that the debtor may attempt to abscond with assets or dispose of them at less than fair market value or dismantle its business. *See In re C.W. Mining Co.*, No. 08-20105, 2008 WL 3539795, *3, n.7 (Bankr. D. Utah Aug. 7, 2008).

36. In *In re Rush*, 7 B.R. 579 (Bankr. N.D. Ala. 1980), an involuntary Chapter 7 case, the Court, pursuant to section 303(f), restrained the debtor from depleting the estate and required the debtor to post a $200,000 bond to indemnify the estate. *See also In re Wilson*, 62 B.R. 43, 46 (E.D. Tenn. 1985) (noting that Section 303(f) permits the

Bankruptcy Court to stay any business transactions it fears will jeopardize the rights of creditors, and because that court always has the power to set aside any transactions that defraud creditors).

37.    Although there is limited authority interpreting section 303(f), the plain statutory text provides the bankruptcy court with extremely broad discretion to restrict an alleged debtor's conduct.   In considering the standard for granting relief under section 303(f), this Court held that "after notice and hearing [a court may] impose certain restrictions on the activities of the debtor without unduly restricting the business." *Beaucrest*, 4 B.R. 164, 165 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 323 (1977); Senate Rep. No. 95-989, 95th Cong., 2d Sess. [*18] 33 (1978), U.S.C.A.N. 1978, p. 5787). "Thus, the results obtained under [section] 303(f) is a balancing of the interests of the debtor with those of the creditors." *Id* at 165. n11

38.    Unlike the circumstances where Section 303(f) relief was denied for failure to present evidence to substantiate a fear that the alleged debtor may attempt to transfer assets from the estate for less than market value (*see In re DiLorenzo*, 161 B.R. 752, 755 (Bankr. S.D.N.Y. 1993)), here abundant cause for concern exists.   As described in the Pfeiffer Aff., Birnbaum and Sofer already transferred two of the Four Properties to relatives or themselves in violation of the Master Agreement.   They did this right after Mr. Pfeiffer concluded the negotiation and pay-off of defaulted mortgages, taxes and liens encumbering those properties, which had been the subject of foreclosure actions, by paying out over $1.625 million.   Their serious and outright disregard for the rights of Pfeiffer and Fishman is manifest.

39.    Moreover, for nearly one year, they refused to arbitrate their disputes with Mr. Pfeiffer and Mr. Fishman as ordered by the State Court. They did not disclose the existence of Mr. Inzlicht's interest in AABS when they entered into the Master Contract with Mr. Pfeiffer and Mr. Fishman.

40.    These facts are cause for genuine concern and the awarding of the relief requested herein so as to preserve value and prevent dissipation of the Alleged Debtor's assets that Pfeiffer has spent millions to preserve.

41.    Further, courts have held that the standard for granting relief under section 303(f) are equivalent to what must shown to justify the appointment of a chapter 11 trustee under section 1104(a) of the Bankruptcy Code. *See DiLorenzo*, 151 at 755; *Beaucrest*, 4. B.R. at 165. But nothing in section 303(f) or its legislative history suggests that a creditor must prove "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" in order to obtain interim restrictions of the debtor's use of property during the gap period. To the contrary, the legislative history provides that relief may be granted upon a showing that there is reasonable likelihood that the debtor will misappropriate assets, so long as such restrictions do not unduly restrict the debtor's business. The conspicuously timed prior transfers of two properties by Birnbaum and Sofer, constituting self-dealing blatantly designed to defeat the rights of Pfeiffer and Fishman under the Master Contract, are strong indications of the need for protection from the risk of future transfers of a similar nature designed to benefit themselves at the expense of creditors of AABS and Messrs. Pfeiffer and Fishman.

42.    Additionally, appointment of a trustee is the clear remedy for the existence of a corporate governance dispute that spills over into areas that affects a debtor's ability

15

to manage its affairs or conduct its business is a classic example warranting the appointment of a trustee. *See In re Ampal-American Israel Corp.*, No. 12-13689, 2013 WL 1400346, *5, (Bankr. S.D.N.Y. Apr. 5, 2013). While Mr. Pfeiffer reserves the right to seek appointment of a trustee in this case, there exist sufficient grounds for the relief requested herein under section 303(f) for an order conditioning the Alleged Debtor's right to use its property in order to prevent the dissipation of assets during the gap period.

43.    Accordingly, Pfeiffer requests that the Court enter an order prohibiting AABS from transferring its interest in the Maltz Contract, and from transferring the Fort Hamilton Property or any proceeds from a sale of its interest in the Maltz Contract or the Fort Hamilton Property, and from making any payments, distributions or transfers to any of its members, their relatives or any other insiders, during the gap period. Such transactions would be fraught with tax consequences and/or inherent conflicts of interest which could be detrimental to AABS, its creditors, and its estate.

44.    It is respectfully submitted that the facts set forth herein and in the Pfeiffer Aff. warrant the requested relief.

## CONCLUSION

45.    For the foregoing reasons, and those set forth in the Pfeiffer Aff., Mr. Pfeiffer respectfully requests that this Court enter an order: (I) pursuant to 11 U.S.C. § 362(d)(1), (A) clarifying that the Automatic Stay does not prevent (i) continuation of prosecution of any claims of any kind in the State Court Action (including any appeals) as between any non-debtor parties, including Birnbaum, Sofer, 42nd Street Properties LLC, Mr. Pfeiffer, Mr. Fishman or any other non-debtor, or (ii) arbitration of any claims or disputes, between any non-debtor parties, arising under or related to the Master Contract

or any related agreement; and (B) modifying the automatic stay so as to permit continuation

of prosecution in the State Court Action or in the Arbitration Proceeding of any claims or

resolution of any disputes of any kind by, against or involving the Alleged Debtor, and (II)

pursuant to 11 U.S.C.§ 303(f), condition the right of the Alleged Debtor to use, acquire or

dispose of property under by prohibiting it from selling or assigning its interest in the Maltz

Contract, and from transferring the Fort Hamilton Property or any proceeds from a sale of

its interest in the Maltz Contract or the Fort Hamilton Property, and from making any

payments, distributions or transfers to any of its members, their relatives or any other

insiders, pending a determination of this Court whether an order for relief against the

Alleged Debtor should be entered in this case, and granting Mr. Pfeiffer such other and

further relief as the Court deems to be just and proper.

Dated: New York, New York
      August 15, 2016

           Rubin LLC

           By:   */s/ Paul A. Rubin*
               Paul A. Rubin
           345 Seventh Avenue, 21st Floor
           New York, NY 10001
           (212) 390-8054
           (212) 390-8064 (fax)
           prubin@rubinlawllc.com

           *Attorneys for Samuel Pfeiffer*